**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**Madero Air LLC, Global Air Charters Inc. and Global MX LLC,**

Plaintiffs,

v.

**Pro Crane Rentals, Inc., Smiley Lifting Solutions, LLC, and Furukawa UNIC Corporation,**

Defendants.

Case No. ____________________

**COMPLAINT**

**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiffs, by and through undersigned counsel, hereby demand judgment against Defendants, and complain against them as follows:

## PARTIES

1. Plaintiff Madero Air LLC ("Madero") is a Minnesota limited liability company with its registered principal executive office address located in South Saint Paul, Minnesota. Madero's sole member is a resident of Minnesota. Thus, for purposes of 28 U.S.C. § 1332(a), Madero is a citizen of Minnesota.

2. Madero is the sole owner of the 1998 Gulfstream G-V jet bearing United States Registration No. N516GH (the "Aircraft"). As owner of the Aircraft, Madero receives a percentage of all charter-flight revenue generated by the Aircraft.

3. Plaintiff Global Air Charters Inc. ("GAC") is a corporation incorporated under the laws of the State of Connecticut with its corporate headquarters and principal place of business

located in St. Paul, Minnesota. Thus, for purposes of 28 U.S.C. § 1332(a), GAC is a citizen of Connecticut and Minnesota.

4. GAC is a United States Part 135 aircraft charter operator holding an Air Carrier Certificate issued by the United States Federal Aviation Administration which provides air charter services on an on-demand basis with, among others, its managed fleet of Gulfstream GV aircraft. GAC manages and operates the Aircraft for Madero, including utilizing the Aircraft for private charter, revenue-generating flights. As the operator of the Aircraft, GAC receives a percentage of all charter-flight revenue generated by the Aircraft.

5. Plaintiff Global MX LLC ("Global MX") is a Pennsylvania limited liability company with its principal place of business located in Hazle Township, Pennsylvania. Global MX is a wholly owned subsidiary of GAC, and GAC is the only member of Global MX. Thus, for purposes of 28 U.S.C. § 1332(a), Global MX is a citizen of Connecticut and Minnesota.

6. Collectively, Madero, GAC, and Global MX are referred to as "Plaintiffs."

7. Global MX is a Part 145 repair station, which maintains and inspects aircraft for Part 135 charter operators, among others. Global MX operates hangers in Allentown, Pennsylvania, for which it either: (a) utilizes to perform maintenance work, or (b) rents to third-parties to utilize as a storage facility for aircraft and/or other equipment.

8. Defendant Pro Crane Rentals, Inc. ("Pro Crane") is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business located at 401 Penn St, Marcus Hook, PA 19061-1301. Thus, for purposes of 28 U.S.C. § 1332(a), Pro Crane is a citizen of Pennsylvania.

9. Pro Crane is a full-service crane rental, rigging, and heavy-hauling company, and its business includes leasing and operating mobile cranes. Pro Crane leases out and operates

UNIC truck-mounted cranes. According to its website, "[s]ince the 1980's, the 'PRO' name has been lifting and rigging in the Tri-State area with attention to detail in mind[,]" Pro Crane has "licensed operators, riggers, and signalmen to keep you compliant to the current laws[,]" and Pro Crane "primarily serve[s] the Tri-State & Florida area but will travel as far west as Ohio and as far south as Florida as well." Further, on its website, Pro Crane represents:

> Pro Crane has a wide variety of cranes to choose from. All cranes are regularly maintenance [sic] which makes them reliable. When calling to schedule a job we will help you decide which crane is appropriate, figure out the feasibility of the project, and help you with street closings or frequently trafficked pathways when on site. If need be, we will come out and survey the job for you to make sure you get the right crane needed for the job. Ask about our two hour quick pick! Quality workmanship and precision is our mindset whenever on a crane rental job. We will go over the clients [sic] needs and requests before we begin the job. Ask us about our gantry crane and roof cart!

10. According to its website under the tab "Safety," Pro Crane represents:

> Pro Crane's excellent safety record speaks for itself. The saftest [sic] way to do a job starts at the beginning of every job. We evaluate the scope of work and look for the safest and most efficient way to get it done.
>
> Pro Crane is a leader in many ways when it comes to safety. We have developed lifting devices "Below-the-Hook Lifting Devices" that meet all of the OSHA Regulations ANSI/ASME B30.20. The devices include Truss Hooks, Bar Joist Hooks, Custom Spreader Bars, Debris Buckets, Etc. All of the devices are engineered, tested and labeled to be OSHA compliant.
>
> Pro Crane's Operators, Signalmen, Riggers are all Certified by the National Commission for the Certification of Crane Operators, also have all state and local certifications with provided proof when required.
>
> Pro Cranes employees are required to pass the OHSA 10 hour training for basic construction.
>
> All equipment is inspected daily and monthly in-house and annually inspected by a third-party crane inspection company.

11. Pro Crane is owner and lessor of the subject UR1500 series UNIC hydraulic, truck mounted crane (the "Crane") that performed work on the Aircraft on April 17, 2025. Pro Crane

was responsible for the maintenance, care, and operation of the Crane, as well as to ensure the Crane's proper set up, assembly, and inspection before performing work. Pro Crane was responsible for compliance with all safety protocols, procedures, and standards required for the operation of the Crane.

12. Defendant Smiley Lifting Solutions, LLC ("Smiley Lifting") is an Arizona limited liability company with its principal place of business located in 5326 W Mohave St., Phoenix, Arizona 85043. Smiley Lifting's members/managers are both residents of Arizona. Thus, for purposes of 28 U.S.C. § 1332(a), Smiley Lifting is a citizen of Arizona.

13. Smiley Lifting is a heavy equipment and crane service operator. According to its website:

> In 1998 we became the exclusive UNIC crane distributor for the United States and Canada, opened in-house manufacturing and maintenance, and began engineering UNIC boom trucks and specialty truck builds. We are the exclusive North American distributor for UNIC mini crawler cranes and owner of the SYPDERCRANE® trademark, with distribution, fabrication, parts, and services operating from our 200,000 sq ft Phoenix facility.

14. Pursuant to its website, Smiley Lifting provides "[n]ationwide rentals, sales, and services for SPYDERCRANE® mini crawlers, MAVLift® glass robots, UNIC boom trucks, and operated crane rental from 5 to 770 tons." Smiley Lifting further flaunts its nationwide credentials as follows:



15. Upon information and belief, Smiley Lifting and/or its related sister company, subsidiary, or corporate partner, also operates a location in the Tri-State area located at 702 Ramsey Ave, Hillside, NJ 07205 ("Tri-State Location"). Smiley Lifting placed the Crane into the stream of commerce by selling and/or shipping the Crane to Pro Crane in Pennsylvania, and Smiley Lifting also mounted the Crane onto a truck and/or chassis for Pro Crane. Upon information and belief, Smiley Lifting sold, shipped, and mounted the Crane for Pro Crane from Smiley Lifting's Tri-State Location.

16. Defendant Furukawa UNIC Corporation ("UNIC") is a Japanese corporation with its principal place of business located in Tokyo, Japan. Thus, for purposes of 28 U.S.C. § 1332(a), UNIC is a citizen of the foreign state of Japan.

17. Collectively, Pro Crane, Smiley Lifting, and UNIC are referred to as "Defendants."

18. UNIC is in the business of, *inter alia*, designing, formulating, manufacturing, testing, packaging, labeling, marketing, selling, and/or distributing hydraulic machinery, including truck-mounted cranes and mini crawler (spider) cranes. According to its website:

> Founded in 1946, Furukawa UNIC has steadily grown to one of Japan's leading truck-mounted crane manufacturers, currently holding a market share of over 50% in Japan. With over 400,000 cranes sold to date, Furukawa UNIC's in-house design and manufacturing capability have made the UNIC name a gold standard for high-quality straight-boom cranes in Japan for decades, with exports to more than 70 countries worldwide.

19. Pursuant to UNIC's website, UNIC's exclusive "Dealer" or distributor of UNIC cranes in North America is Smiley Lifting.

20. UNIC placed the Crane into the stream of commerce, specifically, by selling, transferring, assigning, cosigning, and/or distributing it to Smiley Lifting.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), as this action involves citizens of different states and/or foreign states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, for purposes of 28 U.S.C. § 1332, Plaintiffs are citizens of Minnesota and Connecticut, while Defendants are citizens of Pennsylvania, Arizona, and Japan.

22. This Court has personal jurisdiction over Defendants because: (1) Pro Crane is a citizen of Pennsylvania, (2) Pro Crane, Smiley Lifting, and/or UNIC have continuous and systematic contacts in Pennsylvania, (3) Defendants have sufficient minimum contacts with Pennsylvania because this dispute arises out of or is related to Defendants' contacts with Pennsylvania, and more specifically, Defendants purposely availed themselves of this jurisdiction by and through, without limitation: (a) transacting any business in the Commonwealth of Pennsylvania, (b) shipping of merchandise directly or indirectly into or through the Commonwealth of Pennsylvania, (c) causing harm or tortious injury by an act or omission in the Commonwealth of Pennsylvania; and/or (d) causing harm or tortious injury in the Commonwealth of Pennsylvania by an act or omission outside the Commonwealth.

23. Venue is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of one or more events giving rise to the claims occurred, and where substantial property that is the subject of this action — the Aircraft — are based and/or situated; namely, Allentown, Lehigh County, Pennsylvania. Further, Pro Crane is a resident of this judicial district.

## FACTUAL BACKGROUND

24. On or about April 17, 2025, Pro Crane was the lessor and operator of the Crane at GAC's leased facilities in Allentown, Pennsylvania. As part of repairs and maintenance Global

MX was performing on the Aircraft, the engines for the Aircraft were detached from the Aircraft while being hoisted by the Crane. While Pro Crane was hoisting one of the Aircraft's engines so technicians could secure the engine back on the fuselage of the Aircraft, the Crane suddenly failed, dropping the engine and causing significant damage to the Aircraft and its engine (the "Incident"). The engine and Crane almost collided with several nearby technicians, who only narrowly avoided significant injury or death.

25. During the Incident, Pro Crane did not initiate or follow typical safety protocols or procedures, including without limitation, employing adjustable hydraulic or manual support struts and/or outrigger legs to support leveling of the Crane and safely distribute heavy loads to prevent tipping.

26. During the pre-lawsuit investigation, Plaintiffs further discovered that the load charts either directly affixed to the Crane and/or listed in the Crane's operating manual and/or other materials misstated the maximum weight load threshold for the Crane to operate safely in the particular manner of operation and configuration employed by Pro Crane on the date of the Incident. As a result, the weight of the engine exceeded the actual capacity for the Crane to safely hoist the Aircraft's engine during the Incident.

27. Upon information and belief, in addition to the aforementioned incorrect load chart, the Crane suffered other defects preventing it from safely operating and managing the weight of the Aircraft engine, and therefore, causing the Incident.

28. As a result of the Incident, the Aircraft was grounded from April 17, 2025 until June 20, 2026 while the engine and the Aircraft underwent extensive repairs. During this time period, GAC could not operate the Aircraft for private charter, revenue-generating flights.

29. As a result of the Incident, the Aircraft suffered physical damages and losses totaling at least $6,752,564.27, which GAC has tendered to its insurer, AXA XL Insurance ("Insurer"). It is likely that Insurer will bring its own subrogation claims to seek recovery for any covered losses related to the physical damage and related repairs to the Aircraft stemming from the Incident.

30. During this approximate 15-month period, the Aircraft could not operate charter flights, and as such, Madero and GAC lost monthly charter sales revenues of, at minimum, $750,000 to $1,000,000 per month. Accordingly for the 15-month period of inoperability, Madero and GAC suffered approximate revenue losses of at least $11,250,000.00 to $15,000,000.00, the exact amount to be determined at trial (collectively, "Lost Flight Revenue").

31. During this approximate 15-moth period of inoperability of the Aircraft, Madero also continued to pay various operating costs and expenses for the Aircraft, including without limitation, routine maintenance costs and/or programs, insurance, pilot retainer costs, etc. ("Operations Damages"). These costs and damages will be determined at trial, but at minimum, exceed $1,000,000.00.

32. For a majority For a majority of the time while the Aircraft was inoperable because of the Incident, Global MX stored the Aircraft in one of its two hanger bays at its Allentown, Pennsylvania, facility. As such, Global MX lost the ability to either: (a) utilize this space to perform maintenance work, and/or (b) charge rent for use of this hangar space. Typically, the one hangar bay generates approximately $235,000 to $250,000 per month in revenue. Accordingly for the 15-month period of the Aircraft's inoperability, Global MX suffered lost revenue proceeds of at least $3,525,000 to $3,750,00, the exact amount to be determined at trial (collectively, "Lost Hangar Revenue").

33. Plaintiffs restate and re-allege the preceding paragraphs as though fully set forth herein.

34. Pro Crane had a duty to exercise reasonable care in the operation of the Crane, including a duty to ensure that the Crane was safely operated using all equipment properly and as required by any industry and/or manufacture procedures, protocols, and/or requirements.

35. Pro Crane owed Plaintiffs a duty to act with reasonable care when operating the Crane, including without limitation, ensuring that the Crane was safely operated using all equipment properly and as required by any industry and/or manufacturer procedures, protocols, and/or requirements.

36. Pro Crane breached its duties of care to Plaintiffs and was negligent in its operation of the Crane, including without limitation, by (a) improperly operating the Crane, (b) failing to employ all required safety measures to prevent the Incident, including without limitation, utilizing adjustable hydraulic or manual support struts and/or outrigger legs to support leveling of the Crane and safely distribute heavy loads to prevent tipping, (c) incorrectly calculating the proper load amount tolerances when hoisting the engine on the Aircraft during the Incident, (d) failing to provide adequate and/or property trained personnel to operate the Crane and/or advise as to its proper load capacities, and (e) failing to perform the above measures in conformity with the prevailing and safe industry specifications and standards.

37. As a direct and proximate result of the negligence and carelessness of Pro Crane, the Incident occurred, resulting in, without limitation, the following damages: (a) GAC and Madero's Lost Flight Revenue, (b) Madero's Operations Damages, and (c) Global MX's Lost Hanger Revenue.

38. As a direct and proximate result, Plaintiffs sustained and incurred damages in an amount in excess of $75,000.00, the actual amount to be determined at trial.

**COUNT II:**
**GROSS NEGLIGENCE – Operation of the Crane**
**(Against Pro Crane)**

39. Plaintiffs restate and re-allege the preceding paragraphs as though fully set forth herein.

40. Pro Crane had a duty to exercise reasonable care in the operation of the Crane, including a duty to ensure that the Crane was safely operated using all equipment properly and as required by any industry and/or manufacturer procedures, protocols, and/or requirements.

41. Pro Crane owed Plaintiffs a duty to act with reasonable care when operating the Crane, including without limitation, ensuring that the Crane was safely operated using all equipment properly and as required by any industry and/or manufacturer procedures, protocols, and/or requirements.

42. Pro Crane breached its duties of care to Plaintiffs and was grossly negligent in its operation of the Crane, including without limitation, by (a) improperly operating the Crane, (b) failing to employ all required safety measures to prevent the Incident, including without limitation, utilizing adjustable hydraulic or manual support struts and/or outrigger legs to support leveling of the Crane and safely distribute heavy loads to prevent tipping, (c) incorrectly calculating the proper load amount tolerances when hoisting the engine on the Aircraft during the Incident, (d) failing to provide adequate and/or property trained personnel to operate the Crane and/or advise as to its proper load capacities, and (e) failing to perform the above measures in conformity with the prevailing and safe industry specifications and standards.

43. Pro Crane's breaches of the above duties of care are grossly negligent, in that the circumstances show substantially more than ordinary carelessness, inadvertence, laxity, or indifference, and amount to a failure to exercise even scant care and a flagrant or gross deviation from the required standard of care.

44. As a direct and proximate result of the gross negligence of Pro Crane, the Incident occurred, resulting in, without limitation, the following damages: (a) GAC and Madero's Lost Flight Revenue, (b) Madero's Operations Damages, and (c) Global MX's Lost Hanger Revenue.

45. As a direct and proximate result, Plaintiffs sustained and incurred damages in an amount in excess of $75,000.00, the actual amount to be determined at trial.

**COUNT III:**
**Strict Products Liability**
**(against Pro Crane, Smiley Lifting, and UNIC)**

46. Plaintiffs restate and re-allege the preceding paragraphs as though fully set forth herein.

47. At all relevant times hereto, Pro Crane was engaged in the business of leasing, selling, and/or placing the Crane into the stream of commerce.

48. At all relevant times hereto, Smiley Lifting and UNIC were engaged in the business of designing, formulating, manufacturing, distributing, testing, packaging, marketing, labeling, and/or selling and placing the Crane into the stream of commerce.

49. Plaintiffs were the intended users/customers of the Crane that was formulated, manufactured, distributed, tested, packaged, marketed, labeled, sold, and/or leased by Defendants.

50. The Crane that was designed, formulated, manufactured, distributed, tested, packaged, marketed, labeled, sold, and/or leased by Defendants reached Plaintiffs without any material change in condition or design.

51. The Crane that was designed, formulated, manufactured, distributed, tested, packaged, marketed, labeled, sold, leased, and/or otherwise placed into the stream of commerce by Defendants, was not modified, changed, altered, abused, or misused by Plaintiffs or other users prior to its use on the day of the Incident.

52. Defendants knew and intended that the Crane would be used by members of the general public, and knew of the specific uses, purposes and requirements for which the Crane would be utilized.

53. The subject product as designed, formulated, manufactured, distributed, packaged, marketed, tested, labeled, sold, and/or leased by Defendants was defective and unreasonably dangerous in the following particular aspects:

a. defective manufacturing due to the Crane's susceptibility to sudden failure, tipping over, and/or dropping of loads;

b. defective design due to the Crane's susceptibility to sudden failure, tipping over, and/or dropping of loads;

c. failure to adequately warn Plaintiffs and other consumers or users that the Crane was susceptible to failure, tipping over while in use, and/or dropping of loads;

d. failure to provide Plaintiffs and other consumers or users of the Crane with adequate information, instructions or warnings concerning the safe operation of the Crane, including without limitation, the proper load charts containing the correct, safe weights that the Crane could safely hoist loads in various configurations and conditions;

e. failure to provide Plaintiffs and other consumers or users of the Crane with adequate and conspicuous warnings concerning the safe operation of the Crane to prevent sudden failure, tipping over, and/or dropping of loads.

54. The design, formulation, manufacturing, distribution, testing, packaging, marketing, labeling, sale, and/or leasing of the Crane with the aforementioned defects and/or inadequacies made the Crane defective and unreasonably dangerous. The risks of sudden failure, tipping over, and/or dropping of loads were unknowable and unacceptable to the average or ordinary consumer, and a reasonable person would conclude that the probability and seriousness of harm caused by the Crane would outweigh the burden and/or costs of taking precautions.

55. The defective and dangerous condition of the Crane proximately caused the Incident, which resulted in: (a) GAC and Madero's Lost Flight Revenue, (b) Madero's Operations Damages, and (c) Global MX's Lost Hanger Revenue.

56. Therefore, Defendants are strictly liable to Plaintiffs under the applicable law of the Commonwealth of Pennsylvania, including the Restatement (Second) of Torts §§ 402A and 402B.

57. As a direct and proximate result, Plaintiffs sustained and incurred damages in an amount in excess of $75,000.00, the actual amount to be determined at trial.

**COUNT IV - NEGLIGENCE:**
**Design, Manufacture, Distribution, Testing, Packing, Marketing, Labeling, Selling, and/or Leasing of the Crane**
**(against Pro Crane, Smiley Lifting, and UNIC)**

58. Plaintiffs restate and re-allege the preceding paragraphs as though fully set forth herein.

59. Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, distribution, testing, warning, labeling, packaging, instruction, sale, and leasing of the Crane, including a duty to ensure that the product did not expose users or consumers, such as Plaintiffs, to an unreasonable risk of harm and/or danger, and to ensure that any unreasonable hazard and/or danger associated with the Crane was properly and adequately warned against.

60. Defendants breached their duties of care to Plaintiffs and were negligent in:

a. Designing, manufacturing, formulating, distributing, testing, marketing, labeling, and/or selling the aforementioned Crane that is unreasonably dangerous and/or hazardous;

b. Failing to conform their conduct in designing, manufacturing, formulating, distributing, testing, marketing, labeling, selling, and/or leasing the Crane to the applicable standard of care, in that Defendants knew or, in the exercise of reasonable care, should have known that their product contained a dangerous and hazardous propensity for sudden failure, tipping over, and/or dropping of loads;

c. Failing to provide Plaintiffs and other consumers or users of the Crane with adequate and conspicuous warnings concerning the safe operation of the Crane to prevent sudden failure, tipping over, and/or dropping of loads;

d. Failing to adequately warn Plaintiffs and other consumers or users that the Crane was susceptible to sudden failure, tipping over, and/or dropping of loads;

e. Failing to provide Plaintiffs and other consumers or users of the crane with adequate information, instructions, and/or warnings concerning the safe operation of the Crane, including without limitation, the proper weight load charts affixed to the Crane and/or otherwise provided in its operation manual and/or other materials;

f. Failing to provide, establish, and/or follow proper and adequate controls, policies, and procedures so as to avoid the problems enumerated in the subparagraphs above;

g. Failing to perform the foregoing measures in conformity with prevailing and safe industry specifications and standard;

h. Failing to adequately warn Plaintiffs and others of the dangers and hazardous conditions resulting from the careless and negligent conduct set forth in the preceding subparagraphs;

i. Failing to retain, employ, and/or contract with adequate and properly qualified individuals to undertake the measures set forth in the preceding subparagraphs; and/or

j. Failing to properly train the individuals who were retained, employed, or contracted with to undertake the measures set forth in the subparagraphs above.

61. As noted above, Defendants owed Plaintiffs a number of duties and breached said duties based upon the liability-producing conduct noted in Paragraph 60.

62. As a direct and proximate result of the negligence of Defendants, the Incident occurred, resulting in, without limitation, the following damages: (a) GAC and Madero's Lost Flight Revenue, (b) Madero's Operations Damages, and (c) Global MX's Lost Hanger Revenue.

63. As a direct and proximate result, Plaintiffs sustained and incurred damages in an amount in excess of $75,000.00, the actual amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request the Court enter judgment as follows:

1. An award of damages in favor of Plaintiffs and against Defendants in an amount in excess of $75,000, plus other interest, charges, attorneys' fees, costs, disbursements, and any other damages available at law;

2. For such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by right to jury.

Date: August 18, 2026

Respectfully submitted,

*/s/ Cary M. Snyder*
Cary M. Snyder (0096517)
**TAFT STETTINIUS & HOLLISTER LLP**
200 Public Square, Suite 3500
Cleveland, Ohio 44114
Telephone: (216)706-3682
Facsimile: (216) 241-3707
Email: *csnyder@taftlaw.com*

*Attorney for Plaintiffs*